## CHARLES ADAMS *vs.* JOHN ABBOT.

That a creditor, turning out property to an officer for him to attach upon his writ, and never having had the custody of the property, is not liable in trover for the property, after a nonsuit in his action.

That the attaching officer, having the custody of the property, is alone liable to the person to whom it may belong, after the suit is determined.

That there being a count in *case*, makes no difference, when the judge charges as in trover, and when there is no proof to charge the creditor, except his not returning the goods on demand.

This was an action that came up from the county court on the following exceptions allowed on trial : " This was an action of *trover* for sundry articles of property. Plea, *not guilty*, with notice. The action was against *Abbott* and *Moses Bliss* ; and judgment had, at a previous term, been rendered against *Bliss* and in favor of *Abbott* ; and had been reviewed by the plaintiff, as against *Abbott*.

The plaintiff's testimony tended to prove that, in the year 1821, *Abbott* commenced a suit in his favor against *Adams*, and put the writ into the hands of *Bliss* who was then a deputy sheriff, and turned out the property described in the declaration to him, who thereupon attached the same, and without any further direction from *Abbott*, put it into a building belonging to *Mark Rice*, a few rods from the dwelling house of *Adams*, where it had ever remained, without any interference of *Abbott*. Also, that, at the term of the Supreme Court, holden at *Burlington* in January, 1823, *Abbott* entered a nonsuit in his action, of which *Adams* immediately had notice. Plaintiff also gave evidence, tending to prove, that, a short time previous to the commencement of this suit, he deman-

CHITTENDEN
January,
1830.

Adams
vs.
Abbott.

ded the property of *Abbott*, who thereupon replied that he had never had any thing to do with the property since he turned it out to *Bliss*, the officer; that the officer had taken his own mode to keep it; that he, *Abbott*, had never had the custody of, nor in any way interfered with it; had no claim upon it, and presumed *Mr. Bliss* would give it up on request. *Abbott* proved, that the waggons, boards, posts, wood, oxen and cows, mentioned in the declaration, were at the time of the attachment receipted, or procured to be receipted, to the said *Bliss* by the plaintiff, and that the books were never removed from his possession. *Abbott* by his counsel contended, and requested the court to charge the jury, that, upon the above evidence, if believed, the plaintiff could not maintain his action. The court refused so to charge; but did charge the jury, that it became the duty of the said *Abbott*, immediately upon the determination of his suit against *Adams*, to return the property to him; that no demand on him or the officer was necessary; and that, if the jury found that he had neglected so to return it, the plaintiff was entitled to recover for the property not receipted, nor returned. Verdict for the plaintiff. To which charge defendant excepts, &c."

*Sawyer and Thompson, for defendant.*—1. Trover will not lie in a case like the present, where the defendant never had the custody of the property, nor attempted to exercise any controul over it, except merely turning it out to the officer for him to attach. A demand and refusal to deliver is no conversion, but only evidence of a conversion; and when it fully appears that there has been no conversion, trover cannot be maintained. 2 *Mod.* 244, *Miers* vs. *Solebay*.—*Bull. N. P.* 44.—5. *Burr. Rep.* 2825.

If the plaintiff, in this case, can complain of any thing, it is the detention of his property pending the first suit, and not the conversion of it. The mere omission to return the goods, after the *lien* is off, is no conversion. 6 *East Rep.* 540, *McComber* vs. *Davies.*—2 *Bos. & Pul.* 438, *Bromley* vs. *Conwell.*—1 *Chit. Pl.* 154.—2 *Phil. Ev.* 118, *note a.*

2. The defendant contends, that, where the goods were never in his possession, refusal is not evidence of an actual conversion. —1. *Camp.* 440, *Smith* vs. *Young.*

3. The proof of the defendant's refusal, in this case, amounts to nothing. It is no denial of the plaintiff's right. It asserts none in the defendant. He merely stated that he had never interfered with the property, and referred the plaintiff to the officer, who, the defendant presumed, would re-deliver it on request. This is no evidence of a conversion.—*Green* vs. *Dunn,* 3 *Camp.* 215.

CHITTENDEN
January,
1830.

Adams
vs.
Abbott.

4. The defendant contends, that the case does not state a single act of the defendant, amounting to an " *assumption upon himself of the property, and the right of disposing of the plaintiff's goods,*" which *Lord Holt* defined a conversion to be. 6 *Mod.* 212. It will surely be admitted, that the failure of the defendant's suit, or his subsequent failure to return the property, or any mere nonfeasance of the defendant, cannot render his *original taking* unlawful, so that by relation back, it may assume the character of a conversion. There is no fact in the case, which could make the defendant a trespasser by relation. If trover can be maintained at all, it must be in consequence of something subsequent to the taking ; and therefore the charge of the court rested the conversion on the only possible ground on which it can be sustained, viz. a simple nonfeasance of the defendant. On this point, the authorities already cited are conclusive ; and it would be easy to accumulate them. In connection with the fact, that the defendant has never been in possession, actual or constructive, of the property in question since the attachment, the case states another fact which cannot, and ought not to, be without its influence. The property for which this action was brought, was deposited by the officer on *Mark Rice's* premises, but a trifling distance from the plaintiff's house ; and the probability is, that at the determination of *Abbot's* suit, the property was as near at hand, and could have been obtained by the plaintiff as easily, as in the situation it was before the attachment. After the determination of *Abbot's* suit, the plaintiff could have taken it without any possible objection or embarrassment. None could or would have been interposed by the officer or the defendant, as *Adams* was expressly informed. By the failure of the suit, the attachment and the receipt were discharged, and the property nearer to the plaintiff's premises than before ; and no expense and trouble would be required on the part of the plaintiff. Under these circumstances is it not just and fair to contend, that the *spirit* of the defendant's obligations in regard to the property was satisfied ? For what valuable purpose—whether in contemplation of law or reason, could the defendant be required to perform the idle ceremony of conveying this property from *Mark Rice's* shed to *Adams'* premises ? For every *substantial* end, the plaintiff was in as good a situation in regard to this property, as though it had been brought on to his own premises ; and if, for any *other* purpose, the plaintiff has deemed it expedient to let it rot down, and then extract its value in cash from the defendant, a claim so unreasonable must be supported by something more substantial than quibbles. Nor will the defendant be deemed to have *con-*

CHITTENDEN,
January,
1830.
──────
Adams
vs.
Abbott.

verted it, when the case shows no *act* of the defendant approach-
ing to an assumption or appropriation of the property, and when
every fact in the case shows his *intention* to have been directly
the reverse. But if the defendant's omission to put the property
on the plaintiff's premises, *be* an injury, an action on the case was
the proper and only remedy,

*Charles Adams, pro se.*—The only question involved in this
case, is, whether the person who attaches property is in any way
accountable for the return of that property on the determination
of the suit.

It will be admitted, that if accountable at all, he can be charged
in this form of action. It would seem, that all the points, neces-
sary to make out the case of trover, are here established ; the
property of plaintiff, possession by defendant, and his conversion
or refusal to return on demand.

Attachments of property are not known in *England*, and we
cannot expect to find adjudged cases on that point from the de-
cisions of that country : but the doctrines, applicable to cases of
trover in general, warrant the claim of the plaintiff in this suit.

If the property attached was in the possession of the defendant,
he is then responsible for its return, and his refusal, or neglect to
deliver, is the evidence of conversion. The whole question is
narrowed down to the single inquiry, whether this property was
ever in the possession of the defendant. To make out possession
in defendant it is not necessary that he should, at any time,
have had the actual custody of the property. If it was in the pos-
session of another by his direction, or if it was subject to his con-
troul, it is then, in contemplation of law, in his possession. In the
attachment of property the officer is the agent of the creditor,—is
obliged to take such as is turned out to him, and, although the pro-
perty may not be in the creditor's actual possession or keeping, it
is holden for his benefit, and is, at all times, subject to his controul,
and may be released at any time, when he chooses to direct. The
officer is either his agent, or he is the servant of the officer ; and
it would be a solecism to call him the servant who directs the
whole business, and may controul it at his pleasure. In the
case of *Bond* vs. *Ward*, 7 *Mass*. 130, Chief Justice *Parsons*
stated, that it had been decided, that the action had been sus-
tained even when the property had been returned ; and in the
case of *Hayden* vs. *Shed*, 11 *Mass*. 500, the court decided that
trespass would not lie, on the ground that *case* would. I have
no doubt the action will well lie against the officer on account of
his actual possession. The officer is not merely the servant of

the creditor ; for if he was, the suit would not lie against him.—
*Miers* vs. *Soleby,* 2 *Mod.* 242.

It would be unreasonable to compel the party whose property is taken, to look to the officer exclusively. The officer may not be responsible. Too many cases of this nature have occurred. It would create additional expense ; for the officer could not be compelled to release the property until he had notice of the termination of the suit. The expenses of returning the property may be considerable. They ought not to be thrown upon the party, who has not been in fault; and they cannot be thrown upon the officer. All that he can be required to do, would be to give up the property. And, besides, who is to bear the loss in case of any destruction of the property ? The officer is only accountable for due diligence ; but the party taking, does it at his peril.

HUTCHINSON, J. after stating the case, delivered the opinion of the court.—The trial proceeded, in this case, as if the action were trover merely ; and the bill of exceptions, allowed at the trial, contains no intimation of any grounds assumed by either party, but such as might arise in trover. The present argument seems to have proceeded upon the same ground, till a late suggestion, that the declaration contains a count, also, in case for detaining the property. We do not discover, that this circumstance affects the merits. If this were not urged on the trial, there could be no decision upon it now to be revised ; and nothing, in the bill of exceptions, presents any question, but what would arise upon the count in trover. Besides, there is no proof of any wrong in the original taking, but only in the not returning the property, after a discontinuance of the suit in which the same had been attached. This presents the only question in the action, whether the creditor, who turns out property to an officer, for him to attach, is liable to an action, if that property is not returned immediately upon a discontinuance of the suit? We think him not so liable. The officer who attaches property, is the lawful keeper of that property ; and must, at his peril, have it ready for the creditor, if he recovers in the suit, and takes out execution and pursues his *lien,* and have it ready for the debtor if he recovers, or when the *lien* of the creditor is in any way discharged. Let the property be where it will, there is no constructive possession in any person but the attaching officer, while the *lien,* created by the attachment, is continued. The creditor has no right to the possession. His claim is, that the officer shall safely keep and sell for his benefit. If the officer should deliver the property to the creditor for safe keeping, he would be, like any third person, the keeper or

CHITTENDEN, the officer.   If when the *lien* is discharged  by a discontinuance
January,
1830.       of the suit, the property be demand of  him who  has  the actual
———         custody, and he refuse to deliver it to the  debtor, probably trover
Adams
*vs.*        would lie ;  because the officer would  then have  no claim but for
Abbott.      the debtor.    Whether that be so or not, this shows *Abbott* never
to have had the actual possession of this property, and the charge
of the court, holding him liable to the debtor, under such circum-
stances, was erroneous, and  the judgment  of the county court is
reversed, and,                              A new  trial is granted.

    *G. B. Sawyer* & *J. C. Thompson*, for defendant.

    The plaintiff *pro se.*